UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
UNITED STATES OF AMERICA,

               Plaintiff,

  -against-                              **MEMORANDUM AND ORDER**
                                             Case No. 19-cr-398 (FB)

OMAR CARBAJAL,

               Defendant.
---------------------------------------------------x

*Appearances:*

For the Government:
NOMI BERENSON
Assistant U.S. Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

For the Defendant:
OMAR CARBAJAL, pro se
FCI Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

**BLOCK, Senior District Judge:**

Following a guilty plea to firearm and drug trafficking crimes, pro se defendant Omar Carbajal ("Carbajal") moves for compassionate release under the First Step Act, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For the following reasons, Carbajal's motion is denied.

## BACKGROUND

Carbajal is currently serving a 120-month sentence with a scheduled release date of September 20, 2027, for his involvement in a narcotics conspiracy. On March 12, 2021, Carbajal pleaded guilty to counts one and four of the indictment

in front of Magistrate Judge Peggy Kuo: (1) conspiracy to distribute and possess with intent to distribute 100 grams or more heroin and 500 grams or more of cocaine in violation of 18 U.S.C. § 846; and (2) use of a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c). While the United States Sentencing Guidelines range was 211 to 248 months' imprisonment, on March 10, 2022, this Court sentenced Carbajal to sixty months on each count to run consecutively, i.e., for a total of 120 months, to be followed by four years of supervised release.

## DISCUSSION

The First Step Act allows a federal court to modify a sentence upon a defendant's motion. The Court must determine that three independent, necessary requirements exist: whether (1) the defendant has exhausted administrative remedies, (2) an extraordinary and compelling reason exists for sentence reduction, and (3) the § 3553(a) factors warrant reduction. *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).

This Court turns to the extraordinary and compelling reason analysis.[1]

---

1 While the Government argues that Carbajal has not exhausted his administrative remedies, the Court need not reach that question because it finds that Carbajal has failed to show that an extraordinary and compelling reason exists to warrant sentence reduction.

2

Courts are empowered to exercise their discretion in determining extraordinary circumstances, although rehabilitation alone does not suffice. *See United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).

Carbajal argues that extraordinary and compelling circumstances exist because he pleaded to what he calls a "non-existing charge," the use a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). The statute provides an enhanced sentence for "any person who, during and in relation to any crime of violence or drug trafficking crime . . . *uses* or carries a firearm." 18 U.S.C. § 924(c)(1)(A)(i) (emphasis added). Carbajal challenges the legality of his 60-month sentence under this provision by arguing that *Watson v. United States*, 552 U.S. 74 (2007) invalidated the basis for the charge.

However, Carbajal's reliance on *Watson* is to no avail. In *Watson*, the Supreme Court held that a defendant who traded drugs for a gun does not "use" the gun within the meaning of the statute. As the Court explained,

> [W]hen Watson handed over the drugs for the pistol, the informant or the agent "used" the pistol to get the drugs, just as *Smith* held, but regular speech would not say that Watson himself used the pistol in the trade. A seller does not "use" a buyer's consideration.

*Watson v. United States*, 552 U.S. 74, 79 (2007) (cleaned up). *Watson* thus stands for the proposition that mere receipt of a firearm in a barter transaction for drugs is not "use" within the meaning of § 924(c)(1)(A)(i).

3

*Watson* is unhelpful for Carbajal because rather than merely receiving a firearm, Carbajal bartered the gun. In *Smith v. United States*, 508 U.S. 223 (1993), the Supreme Court considered *Watson*'s reverse transaction — a defendant trading a gun for drugs — and held that a "defendant who received drugs in exchange for a firearm 'used' the firearm 'during and in relation to ... [a] drug trafficking crime.'" *United States v. Gardner*, 602 F.3d 97, 100 (2d Cir. 2010) (quoting *id.* at 228-30). *Watson*, decided more than a decade later, did not overrule *Smith* but rather distinguished it, noting that a person "uses" a gun in a transaction when he trades it but not when he simply receives it. *Watson*, 552 U.S. at 81.

*Watson* is thus inapposite to this case because Carbajal traded the gun for money during and in relation to a drug trafficking offense. As the Supreme Court explained after *Smith*, "use" under the statute "certainly includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm." *Bailey v. United States*, 516 U.S. 137, 148 (1995), *superseded by statute on other grounds, as recognized by Welch v. United States*, 578 U.S. 120, 133 (2016). Unlike Watson, who merely received the gun, Carbajal, like Smith, "used" the gun in barter, albeit for $800 cash rather than for drugs. This fact brings Carbajal's conduct within the ambit of the statute.

Moreover, Carbajal's "use" of the gun was "during and in relation to" a drug

4

trafficking crime. As Carbajal recounted in his allocution to Magistrate Judge Kuo, Carbajal sold the gun for $800 cash to a customer who was simultaneously buying drugs from Carbajal. Tr. 35:8-18. Judge Kuo asked Carbajal how the gun sale related to the drug trafficking offense, to which Carbajal replied, "I sold him the gun so I basically know that's involving the drug conspiracy. . . . I'm helping somebody protect their drugs." *Id.* at 34:2-10. Carbajal also affirmed that the "person that [he] sold it to was also involved in the conspiracy to sell drugs" and that the customer wanted the gun to protect his drug business. *Id.* at 34:13-36:4. Consequently, *Watson* does not invalidate Carbajal's § 924(c) charge, and the Court is satisfied as to the validity of the charge to which Carbajal pleaded and the sentence the Court rendered.

Additionally, Carbajal, represented by counsel, entered into a knowing and intelligent plea agreement in which he agreed "not to file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the event that the Court imposes a term of imprisonment of 365 months or below." He also waived the right to raise on appeal or on collateral review any argument that "the admitted conduct does not fall within the scope of the statute."

The Second Circuit has not yet decided whether a defendant can challenge

5

the validity of claims that were validly waived in a plea agreement through a compassionate release motion, *see United States v. Connelly*, No. 22-2337-CR, 2023 WL 8446806, at *2 (2d Cir. Dec. 6, 2023) (declining to address the issue), although several district courts in the Circuit have concluded that defendants may generally not use compassionate release to resuscitate waived challenges.  *See, e.g.*, *White v. United States*, No. 13-CR-255S (1), 2022 WL 4244219, at *3 (W.D.N.Y. Sept. 15, 2022), *aff'd sub nom. id*.  ("To now consider these validly waived claims as a basis for compassionate release would, in this Court's view, constitute an impermissible end-run around the enforceable waiver provisions of the plea agreement."); *United States v. Laboy*, No. 1:15-CR-00091 EAW, 2021 WL 5176663, at *2 (W.D.N.Y. Nov. 8, 2021) ("The Court agrees with the government that Defendant appears to be using the compassionate release statute as an end run around the appeal and collateral attack waiver provision in his plea agreement."); *United States v. Lisi*, 440 F. Supp. 3d 246, 251 (S.D.N.Y. 2020).

The Court notes in passing that there might be certain circumstances in which a legal error is "extraordinary and compelling" enough to warrant compassionate release.  Indeed, consistent with the Second Circuit's construction of the First Step Act in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020), a district court enjoys "broad" discretion and may consider "the full slate of

6

extraordinary and compelling reasons" that are "br[ought] before them." *Id.* at 237. This Court has embraced the First Step Act as a vehicle for reconsidering sentences that do not reflect the transcendent interests of justice the criminal legal system ought to embody. *See United States v. Russo*, 643 F. Supp. 3d 325, 339 (E.D.N.Y. 2022) (describing the First Step Act as a "success for the movement to end mass incarceration" and injecting into our legal system a "compassionate dimension"). Compassionate release could thus represent a safety valve to catch erroneous sentences that slip through the cracks of the judicial system.

However, those hypothetical circumstances are not present here. In addition to Carbajal's knowing and intelligent waiver in the plea agreement, this case presents no apparent legal error, and the Court sentenced Carbajal to 120 months total, well below the 365 months contemplated in the plea agreement and the 211-to-248-month Guidelines range. Accordingly, because Carbajal has failed to show the existence of extraordinary and compelling circumstances justifying sentence reduction, his motion for compassionate release is denied.

**SO ORDERED.**

    /S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 25, 2024